PAUL v BOGLE

Docket No. 122204. Submitted February 4, 1992, at Detroit. Decided April 6, 1992, at 10:05 A.M.

Ronald J. and Patricia Paul brought an action in the Wayne Circuit Court against George Bogle, Gregory C. Freed, and Wolverine Expediting, Inc., seeking damages resulting from an accident in which a vehicle driven by Ronald Paul was struck by a truck driven by Freed, owned by Bogle, and leased to Wolverine. The lease, in accordance with Interstate Commerce Commission regulations, provided for Wolverine's exclusive supervision and control of the vehicle and responsibility for all claims of damages arising out of its operation. The court, Kaye Tertzag, J., granted summary disposition for Bogle and Freed, finding that the ICC regulations fixed primary liability on Wolverine, and denied summary disposition for Wolverine, finding that its indemnification claim against Freed was precluded by Freed's status as its "statutory employee." Wolverine appealed.

The Court of Appeals *held:*

Wolverine, under Michigan law, is liable for any award made to the Pauls, because it is an owner of the vehicle within the meaning of the owner's liability provisions of the Vehicle Code. Bogle is entitled to indemnification from Wolverine for any amount he may be required to pay, because the ICC-mandated provision in the lease requires Wolverine to assume complete responsibility for liability arising out of the use of the leased vehicle. Freed is not entitled to indemnification from Wolverine, but Wolverine is entitled to indemnification from Freed.

1. The ICC regulations do not preclude a determination of

REFERENCES

Am Jur 2d, Automobiles and Highway Traffic §§ 12-13, 24, 641, 652, 685 *et seq.,* 751, 754; Carriers §§ 24-25, 40-41; Indemnity §§ 19-20, 22; Master and Servant §§ 404 *et seq.;* Negligence § 1499.

Right of motor vehicle owner liable to injured third person because of negligence of one permitted to drive, to indemnity from the latter or the latter's employer to whom vehicle was bailed. 43 ALR2d 879.

Liability under respondeat superior doctrine for acts of operator furnished with leased machine or motor vehicle. 17 ALR2d 1388.

liability pursuant to state law. Rather, those regulations create a fictional "statutory employee" relationship between the carrier and the driver so that the carrier is vicariously liable for injuries caused by acts of negligence of the driver to the same extent that it would have been had the driver been its actual employee.

2. Because the lease arrangement was for more than thirty days, Wolverine was an owner of the vehicle within the meaning of the Vehicle Code. Accordingly, it is liable for any injury occasioned by the negligent operation of the vehicle, unless the vehicle was being operated without its express or implied consent or knowledge. Wolverine's failure to terminate the lease in the manner prescribed in the ICC regulations and the lease amounts to continuing consent to Freed's operation of the vehicle.

3. Because Freed's liability to the Pauls is based on his active negligence, he is not entitled to either common-law or implied-contract indemnity. Freed failed to establish a basis for his claim that he is a third-party beneficiary of the indemnity provision of the lease. Accordingly, the trial court erred in granting Freed summary disposition of his claim for indemnity by Wolverine.

4. Because the lease clearly provides that Wolverine must indemnify Bogle, the trial court reached the proper result in granting him summary disposition of his indemnity claim.

5. Because Wolverine failed to surrender the vehicle in accordance with ICC regulations and failed to give the necessary ten-day notice of termination required by the lease, there was no termination. Wolverine's pleadings fail to establish a basis for finding an anticipatory breach or repudiation of the lease by Bogle.

6. Bogle's pleadings against Wolverine adequately set forth his claim for indemnification.

7. Wolverine is entitled to seek common-law indemnity from Freed. Nothing in the ICC regulations precludes a carrier from seeking recovery from another party who is at fault. The trial court erred in granting summary disposition for Freed with regard to Wolverine's claim of indemnity.

Affirmed in part, reversed in part, and remanded.

1. AUTOMOBILES — COMMON CARRIERS — LEASED VEHICLES — INTERSTATE COMMERCE COMMISSION — LIABILITY.

Regulations promulgated by the Interstate Commerce Commission requiring that a motor vehicle lease by an ICC-licensed

motor carrier contain provisions that the carrier maintain exclusive control of the vehicle and assume complete responsibility for the operation of the vehicle during the period of the lease do not replace applicable state laws concerning liability arising out an accident involving the leased vehicle; the ICC regulations create a fictional "statutory employee" relationship between the driver of the leased vehicle and the carrier leasing the vehicle.

2. AUTOMOBILES — COMMON CARRIERS — LEASED VEHICLES — OWNER'S LIABILITY.

A motor carrier licensed by the Interstate Commerce Commission that leases a motor vehicle under a lease that conforms to ICC regulations by requiring that the carrier maintain exclusive control over and assume complete responsibility for the vehicle during the period of the lease is deemed to be an owner of the leased vehicle for the purpose of the Vehicle Code if the lease is for a period of more than thirty days; the carrier is liable for any injury occasioned by the negligent operation of the vehicle until the lease is terminated, the identifying placards are removed from the vehicle, and the carrier has received from the lessor a receipt for surrender of the vehicle; operation of the vehicle by a driver hired by the lessor before those acts have been undertaken is deemed to be with the carrier's knowledge and consent (MCL 257.37[a], 257.401; MSA 9.1837[a], 9.2101).

3. INDEMNITY — COMMON CARRIERS — DRIVERS — VICARIOUS LIABILITY.

A motor vehicle carrier licensed by the Interstate Commerce Commission that leases a motor vehicle pursuant to a lease that conforms to ICC regulations requiring the carrier to assume complete responsibility for the vehicle may seek from a driver of the leased vehicle who was hired by the lessor indemnification for damages that arise out of the driver's negligent operation of the vehicle.

*Brochert & Ward* (by *David S. Anderson*), for George Bogle and Gregory C. Freed.

*Rutledge, Manion, Rabaut, Terry & Thomas, P.C.* (by *Christopher L. Terry*), for Wolverine Expediting, Inc.

Before: WAHLS, P.J., and JANSEN and T. G. KAV-
ANAGH,* JJ.

T. G. KAVANAGH, J. This matter gives us occa-
sion to examine the extent of liability a lessee of a
semitrailer truck tractor has for damages sus-
tained by another, due to negligent operation of
the truck tractor, under the applicable federal law
and regulations and the laws of the State of Michi-
gan.

Defendant George Bogle was the owner of a
1981 semitrailer truck tractor. On June 11, 1985,
he leased the truck to third-party defendant
Wolverine, for use in its interstate transport busi-
ness. The lease had no set expiration date, but was
rather to be in effect until ten days after receipt,
by certified mail, of written notice from either
party terminating the lease. Under the terms of
the lease, as required under federal regulations,
Wolverine was granted exclusive supervision and
control over the operation of the truck for the
entire term of the lease. Wolverine was also "re-
sponsible for all claims of damages, or otherwise,
arising out of the operations of this equipment
during the full period of the lease." Bogle subse-
quently hired defendant Gregory C. Freed to drive
the truck.

On October 8, 1985, Freed was driving the truck
east on I-96 near Grand River Avenue in Wayne
County. When changing lanes, Freed's truck
struck the left rear of plaintiff Ronald J. Paul's
vehicle. Paul's vehicle, in turn, spun out of control
and was hit by a third vehicle. Paul suffered
serious injuries as a result of being thrown out of
his vehicle.

On July 18, 1986, plaintiffs filed suit against

* Former Supreme Court justice, sitting on the Court of Appeals by
assignment.

Bogle, Freed, and Wolverine, alleging general negligence and violation of several statutes on the part of Freed and vicarious liability with respect to Bogle and Wolverine. After plaintiffs stipulated Wolverine's dismissal from the lawsuit, Bogle and Freed filed a third-party complaint against Wolverine, alleging that Wolverine was primarily liable for plaintiffs' damages pursuant to the applicable regulations of the Interstate Commerce Commission. Wolverine, in its answer and affirmative defenses, denied that it was liable, relying on the terms of the lease agreement and, alternatively, on the factual circumstances existing at the time of the accident. Wolverine also asserted in a counterclaim that it was entitled to indemnification from Freed for any sums owed by it to Bogle.

Bogle, Freed, and Wolverine then each moved for summary disposition of the third-party claims. Bogle and Freed contended that the ICC regulations established Wolverine's liability. Wolverine, on the other hand, argued that plaintiffs' failure to name it as a defendant in the underlying lawsuit precluded a judgment against it in favor of Bogle and Freed, that the ICC regulations did not establish its liability, and that Wolverine was entitled to common-law indemnification from Freed for any judgment against it in favor of Bogle. In an opinion issued on June 27, 1989, the trial court found that the ICC regulations established Wolverine's primary liability and rejected Wolverine's claim for indemnification from Freed, finding that Freed was a "statutory employee" of Wolverine.

Wolverine then filed this timely appeal, raising a number of issues.

I

Given that its resolution is central to this dis-

pute, we will first address Wolverine's assertion that the applicable ICC regulations are not intended to replace applicable state law regarding a lessee's liability under the lease.

The ICC regulations governing the use of leased semitrailer truck tractors in interstate commerce, in the version applicable to this matter, set forth a number of specific requirements for lease agreements between vehicle owners and licensed interstate carriers. To begin, any lease agreement must be in writing, 49 CFR 1057.11(a) (1985), must include a specific durational term, 49 CFR 1057.12(b) (1985), and must provide "that the authorized carrier lessee shall have exclusive possession, control, and use of the equipment for the duration of the lease. The lease shall further provide that the authorized carrier lessee shall assume complete responsibility for the operation of the equipment during the duration of the lease." 49 CFR 1057.12(c)(1) (1985). As noted above, the written lease agreement between Wolverine and Bogle complied with these requirements.

The policy underlying these requirements has been succinctly described by the Tenth Circuit Court of Appeals in *Empire Fire & Marine Ins Co v Guardian National Ins Co,* 868 F2d 357, 362 (CA 10, 1989):

In the past, the use by truckers of leased or borrowed vehicles led to a number of abuses that threatened the public interest and the economic stability of the trucking industry. In some cases, ICC-licensed carriers used leased or interchanged vehicles to avoid safety regulations governing equipment and drivers. In other cases, the use of non-owned vehicles led to public confusion as to who was financially responsible for accidents caused by those vehicles.

In order to address these abuses, Congress

amended the Interstate Commerce Act to allow the ICC to prescribe regulations to insure that motor carriers would be fully responsible for the operation of vehicles certified to them. In response to this mandate, the ICC promulgated regulations requiring that every lease entered into by an ICC-licensed carrier must contain a provision stating that the authorized carrier maintain "exclusive possession, control, and use of the equipment for the duration of the lease," and "assume complete responsibility for the operation of the equipment for the duration of the lease." Further, the ICC requires that all ICC-certified carriers maintain insurance or other form of surety "conditioned to pay any final judgment recovered against such motor carrier for bodily injuries to or the death of any person resulting from the negligent operation, maintenance, or use of motor vehicles" under the carrier's permit. [Citations omitted.]

Wolverine argues that the decision of the Sixth Circuit Court of Appeals in *Wilcox v Transamerican Freight Lines, Inc,* 371 F2d 403 (CA 6, 1967), should be followed by this Court because it is the decision that is binding upon federal district courts in this state and because it is consistent with a decision of the ICC decided after the accident that is the subject matter of this dispute. In *Lease & Interchange of Vehicles,* 3 ICC2d 92, 93 (1986), the ICC expressed its disagreement with the reliance of

certain courts . . . on Commission regulations in holding carriers liable for the acts of equipment owners who continue to display the carrier's iden-tification on equipment after termination of the lease contract. We prefer that courts decide suits of this nature by applying the ordinary principles of State tort, contract, and agency law. The Com-mission did not intend that *its* leasing regulations would supersede otherwise applicable principles of State tort, contract, and agency law and create carrier liability where none would otherwise exist.

Our regulations should have no bearing on this
subject. Application of State law will produce ap-
propriate results.

However, state law has been applied without
reference to the regulations of the ICC only in a
few cases.[1] While a hybrid approach has been
taken in some cases,[2] the so-called "statutory em-
ployee" approach[3] has been applied in the vast
majority of reported cases. As succinctly described
by the Texas Court of Appeals in *John B Barbour
Trucking Co v Texas,* 758 SW2d 684, 688 (Tex App,

[1] See, e.g., *Schindele v Ulrich,* 268 NW2d 547, 551 (Minn, 1978), app
dis sub nom *Sammons v Schindele,* 439 US 1059 (1978); *Pace v
Southern Express Co,* 409 F2d 331 (CA 7, 1969); *Gudgel v Southern
Shippers, Inc,* 387 F2d 723 (CA 7, 1967).

[2] See, e.g., *Phillips v J H Transport, Inc,* 565 So 2d 66, 70-71 (Ala,
1990) (failure to remove placards raises a presumption of control), and
*Wilson v Riley Whittle, Inc,* 145 Ariz App 317, 321; 701 P2d 575
(1984).

[3] See, e.g., *Wyckoff Trucking, Inc v Marsh Bros Trucking Service,
Inc,* 58 Ohio St 3d 261, 265-266; 569 NE2d 1049 (1991); *John B
Barbour Trucking Co v Texas,* 758 SW2d 684, 687, n 4 (Tex App,
1988); *Nationwide Mutual Ins Co v Holbrooks,* 187 Ga App 706, 711-
713; 371 SE2d 252 (1988); *Planet Ins Co v Transport Indemnity Co,*
823 F2d 285 (CA 9, 1987); *Harvey v F-B Truck Line Co,* 115 Idaho 411,
417-418; 767 P2d 254 (1987); *Wilkerson v Allied Van Lines, Inc,* 360
Pa Super 523, 527-528; 521 A2d 25 (1987) (apparent approval); *Re-
diehs Express, Inc v Maple,* 491 NE2d 1006, 1012 (Ind App, 1986);
*Empire Fire & Marine Ins Co v Truck Ins Exchange,* 462 So 2d 76, 79
(Fla App, 1985); *McLean Trucking Co v Occidental Fire & Casualty
Co of North Carolina,* 72 NC App 285, 290; 324 SE2d 633 (1985); *Price
v Westmoreland,* 727 F2d 494 (CA 5, 1984); *Schell v Navajo Freight
Lines, Inc,* 693 P2d 382, 384 (Colo App, 1984); *Rodriguez v Ager,* 705
F2d 1229 (CA 10, 1983); *Carolina Casualty Ins Co v Ins Co of North
America,* 595 F2d 128, 137, n 29 (CA 3, 1979); *Kreider Truck Service,
Inc v Augustine,* 76 Ill 2d 535, 540-541; 394 NE2d 1179 (1979);
*Matkins v Zero Refrigerated Lines, Inc,* 93 NM App 511, 516-517; 602
P2d 195 (1979); *Weeks v Kelley,* 377 A2d 444, 447 (Me, 1977); *Bankers
& Shippers Ins Co of New York v Watson,* 216 Va 807, 810-811; 224
SE2d 312 (1976); *Wellman v Liberty Mutual Ins Co,* 496 F2d 131, 139
(CA 8, 1974); *Proctor v Colonial Refrigerated Transportation, Inc,* 494
F2d 89, 92 (CA 4, 1974); *Simmons v King,* 478 F2d 857 (CA 5, 1973);
*Cox v Bond Transportation, Inc,* 53 NJ 186, 203-205; 249 A2d 579
(1969) (creates strong presumption of control, rebuttable only by
compliance with ICC regulations); *Mellon Nat'l Bank & Trust Co v
Sophie Lines, Inc,* 289 F2d 473 (CA 3, 1961).

1988), the statutory employee approach holds an ICC carrier

> vicariously liable for injury, caused by the driver's negligent operation of a vehicle, when three factors coincide: (1) the carrier does not own the vehicle; (2) the carrier operates the vehicle, under an "arrangement" with the owner, to provide transportation subject to the [Interstate Commerce] Commission's jurisdiction; and (3) the carrier does not literally employ the driver. In these circumstances, the driver is held to be the *constructive* or "statutory" employee of the carrier; and, in consequence of this fiction, the doctrine of *respondeat superior* imposes upon the carrier a vicarious liability for the negligence of its "employee" the driver. [Emphasis in original.]

*Wilcox,* which is relied upon by Wolverine, is cited as one of the few decisions to rely solely upon state law to determine a carrier's liability. However, we decline to follow *Wilcox.* We would note that the Sixth Circuit no longer adheres to that ruling, see *Johnson v S O S Transport, Inc,* 926 F2d 516 (CA 6, 1991), and that, in any event, given the nature of our federal system, the decisions of that court are not binding upon us. However, we are persuaded by the subsequent, if somewhat tardily rendered, opinion of the ICC that rejects those decisions that have sought to impose liability solely on the basis of its regulations.

This is not to say that we reject those decisions of other courts that have given weight to the ICC regulations. We do not believe that the statutory employee doctrine, adopted by a substantial number of jurisdictions, imposes liability solely on the basis of the ICC regulations. Rather, the doctrine appears to impose liability under state law, after creating the fictional relationship existing between

the driver and the ICC carrier. We agree with such a reading of the duties imposed by the regulations.

Given that Michigan has not yet considered this issue, we conclude that state law is the appropriate law to consider, with due reference to the duties imposed and the relationships created by the federal regulations. We accordingly adopt that portion of the statutory employee rule that creates a fictional employment relationship between the driver and carrier and then look to the applicable state law for the imposition of liability. By such a rule, we give appropriate deference to the now longstanding administrative interpretation of the ICC regulations by the agency charged with their enforcement, see *Feld v Robert & Charles Beauty Salon,* 174 Mich App 309, 314; 435 NW2d 474 (1989), rev'd on other grounds 435 Mich 352; 459 NW2d 279 (1990), and also acknowledge the duties imposed under those regulations on interstate carriers.

II

Having determined that Wolverine is potentially liable under the statutory employee doctrine for Freed's negligence, we next address the question, "What is the applicable Michigan law?" Under the Vehicle Code, MCL 257.1 *et seq.*; MSA 9.1801 *et seq.*, an owner of a motor vehicle includes any person or entity having the exclusive use of a motor vehicle under a lease for a period of more than thirty days. MCL 257.37(a); MSA 9.1837(a). An owner of a motor vehicle is liable for any injury occasioned by the negligent operation of the vehicle, unless the vehicle is being driven without

the owner's "express or implied consent or knowledge." MCL 257.401(1); MSA 9.2101(1).[4]

Given that the lease agreement between Bogle and Wolverine granted Wolverine the exclusive use of the truck for a period of not less than thirty days, we believe that there can be no dispute that Wolverine constituted an owner of the vehicle under MCL 257.37; MSA 9.1837. We also believe that Wolverine's failure to remove its identifying placards and to request, in accordance with the ICC regulations, a receipt for surrender of the vehicle constitutes its implied consent to Bogle and Freed to utilize the truck for whatever purposes the vehicle was being used at the time of its collision with Paul's vehicle. Such a conclusion is also supported by our holding that Wolverine was Freed's statutory employer. Accordingly, we find that, under the applicable state law, Wolverine was liable as an owner of the vehicle.

Given this basis of liability, we reject Wolverine's assertion that the disputed fact that Freed was driving the truck on Bogle's business, and not Wolverine's, at the time of the accident relieves it of any liability. The applicable statute, when taken into consideration with Wolverine's duties under the applicable ICC regulations, precludes the success of such an argument. Under the ICC regulations, Wolverine continued to consent to the use of the vehicle, no matter whose business or interests were pursued, as long as the identifying placards remained on the vehicle and Wolverine had not obtained a receipt from Bogle or his agent for the return of the vehicle. Given this implied consent,

[4] The version of § 401 that is applicable to this matter did not contain different subsections; however, because that portion of the statute cited was not substantially changed by its amendment, we have chosen to cite the current version for the ease of the bench and bar.

it is immaterial whose business was being pursued at the time of the accident.

### III

Having established the applicable law, we now turn to the parties' motions for summary disposition. Bogle and Freed sought summary disposition pursuant to MCR 2.116(C)(10), arguing that Wolverine's liability was established as a matter of law pursuant to the applicable ICC regulations and requesting indemnification pursuant to the establishment of that liability.

A motion pursuant to MCR 2.116(C)(10) tests whether factual support for a claim exists. In making its determination, the court must consider all pleadings and other documentary evidence available to it. MCR 2.116(G)(5). The nonmoving party has the burden of showing through the use of evidentiary materials, not mere allegations and denials in the pleadings, the existence of a genuine issue of material fact. *McCart v J Walter Thompson USA, Inc,* 437 Mich 109, 115; 469 NW2d 284 (1991); *Amorello v Monsanto Corp,* 186 Mich App 324, 329; 463 NW2d 487 (1990). Giving the benefit of any reasonable doubt to the nonmoving party, "the court must determine whether a record might be developed which would leave open an issue upon which reasonable minds might differ." *Id.* at 330. Traditionally, this Court has been quite liberal in finding that a genuine issue of material fact exists. *Wagner v Regency Inn Corp,* 186 Mich App 158, 166; 463 NW2d 450 (1990).

Michigan courts recognize three possible sources of a right to indemnification: the common law, an implied contract, and an express contract. *Oberle v Hawthorne Metal Products Co,* 192 Mich App 265, 269-270; — NW2d — (1991); *Skinner v D-M-E*

*Corp,* 124 Mich App 580, 584; 335 NW2d 90 (1983). Because both common-law indemnity and implied contractual indemnity require that the person seeking indemnification be free from any active negligence, *Shaffner v Riverview,* 154 Mich App 514, 520-521; 397 NW2d 835 (1986), we agree that Freed is precluded from claiming indemnification under either of those theories. Any liability for which Freed may ultimately seek indemnification from Wolverine would arise from his negligent operation of the truck. Therefore, the only basis for indemnification which Freed could successfully assert is that of an express contract, under the indemnification clause contained in the lease agreement between Bogle and Wolverine.

We disagree with Freed's self-characterization as a third-party beneficiary of the contract of indemnification based on his duties as driver of the vehicle on behalf of Bogle and Wolverine. To assert a right to indemnification from Wolverine under the lease agreement, which would incidentally also preclude Wolverine's assertion of a right to common-law indemnification against him, Freed must have been an intended third-party beneficiary to the indemnification contract between Bogle and Wolverine. *Allstate Ins Co v Keillor,* 190 Mich App 499, 501; 476 NW2d 453 (1991). To be an intended third-party beneficiary, the promisor must have undertaken to do something to or for the benefit of the party asserting such status. *Rieth-Riley Construction Co, Inc v Dep't of Transportation,* 136 Mich App 425, 429-430; 357 NW2d 62 (1984); MCL 600.1405; MSA 27A.1405. An objective test is used to determine the claiming party's status, and focuses upon the contract itself. *Allstate Ins Co, supra* at 502; *Stillman v Goldfarb,* 172 Mich App 231, 238; 431 NW2d 247 (1988). Where the contract is intended to primarily ben-

efit its signatories, the mere fact that a third person would be incidentally benefited does not entitle that person to its protection. *Alden State Bank v Old Kent Bank—Grand Traverse,* 180 Mich App 40, 44; 446 NW2d 599 (1989).

Under these rules of law, we cannot conclude that Freed was an intended beneficiary of the contract of indemnification between Bogle and Wolverine. Although the former driver signed the lease on behalf of Bogle, there is no specific mention of the driver of the vehicle within the contract of indemnification. The contract, in accordance with the ICC regulations and their underlying intent, was intended to allocate liability between Bogle and Wolverine, not between Bogle, Wolverine, and Freed. Accordingly, Freed is not entitled to the protection of the contract of indemnity as a third-party beneficiary, and the trial court erred in granting his motion for summary disposition pursuant to MCR 2.116(C)(10).

However, Bogle, as a signatory to the lease agreement, was entitled to indemnification from Wolverine. Given our conclusion that Wolverine is liable under state law, and not solely by operation of the applicable ICC regulations, we believe that the trial court's grant of Bogle's motion for summary disposition, while correct, was based on an erroneous application of the law. However, where the trial court reaches a correct result for the wrong reason, the result will not be disturbed on appeal. *Reisman v Regents of Wayne State Univ,* 188 Mich App 526, 530; 470 NW2d 678 (1991). Accordingly, we affirm the trial court's grant of Bogle's motion for summary disposition pursuant to MCR 2.116(C)(10) of his third-party complaint.

IV

Wolverine claims that the trial court erred in

granting Bogle's motion for summary disposition pursuant to MCR 2.116(C)(10) because there existed a genuine issue of material fact. Essentially, Wolverine asserts that there is a dispute concerning whether its lease with Bogle had been terminated before the accident. Given that the ICC regulations in question impose upon Wolverine the affirmative duties to "obtain a receipt from the owner" when it surrendered possession of the truck, 49 CFR 1057.12(b)(2) (1985), and to "remove all identification showing it as the operating carrier before giving up possession of the equipment," 49 CFR 1057.12(c)(1) (1985), that Wolverine did neither, and that the lease required a ten-day written notice for termination of the lease, which neither party provided, we do not believe that there exists any genuine issue of material fact. The lease had not been terminated under either its own terms or the applicable regulations governing such lease agreements.

Wolverine also argues that Bogle's alleged attempted termination of the lease constituted an anticipatory breach or repudiation of the terms of the lease, thereby excusing Wolverine from providing the ten-day notice.

"Under the doctrine of anticipatory breach, if a party to a contract, prior to the time of performance, unequivocally declares the intent not to perform, the innocent party has the option to either sue immediately for the breach of contract or wait until the time of performance." *Brauer v Hobbs,* 151 Mich App 769, 776; 391 NW2d 482 (1986). In determining whether an anticipatory breach has occurred, it is the party's intention manifested by acts and words that is controlling, and not any secret intention that may be held. *Carpenter v Smith,* 147 Mich App 560, 565; 383

NW2d 248 (1985). Regarding oral repudiation, "a party's language must be sufficiently positive to be reasonably interpreted to mean that the party will not or cannot perform"; regarding repudiation by acts, "a party's act must be both voluntary and affirmative, and must make it actually or apparently impossible for him to perform." 2 Restatement Contracts, 2d, § 250, pp 273-274. See also 17A Am Jur 2d, Contracts, §§ 582, 704, pp 592-593, 718-720.

Simply put, even when taken in a light most favorable to Wolverine, the facts in this matter do not support a conclusion that Bogle repudiated the lease agreement. While conflicting testimony regarding whose business the truck was being used for at the time of the accident was presented to the trial court,[5] the applicable ICC regulations leave no room for doubt. The carrier, in this case Wolverine, is strictly responsible for return of its placards and for obtaining a receipt at the termination of a lease agreement. Because there is no dispute that Wolverine did not do so in this matter, the lease agreement was not repudiated. The trial court did not err in granting Bogle's motion for summary disposition.

V

Wolverine moved for summary disposition pursuant to MCR 2.116(C)(8), claiming that Bogle and Freed's third-party complaint did not state a cause of action, because plaintiffs' original complaint

[5] According to the deposition testimony of E.W. "Wayne" Gipson, one of Wolverine's former employees, both Freed and Bogle expressed their intention to terminate the lease agreement shortly before the accident. However, Bogle testified at his deposition that he had expressed his dissatisfaction with the declining number of runs available from Wolverine and that the dispatcher had agreed to "turn his card to the wall" or to not use Bogle's truck for a short period of time to enable Bogle to seek jobs elsewhere.

asserted only that Freed was liable because of his common-law negligence and that Bogle and Wolverine were liable pursuant to the owner's liability statute, MCL 257.401; MSA 9.2101. At no point, Wolverine asserts, did plaintiffs allege any liability predicated upon interstate commerce sufficient to impose liability upon it under the applicable ICC regulations. Given our holding that state law in concert with the applicable ICC regulations, and not the regulations alone, governs a determination of a party's liability under the circumstances of this case, we reject this argument.

Similarly, we also partially reject Wolverine's argument that plaintiffs' failure to assert vicarious liability against it, when coupled with Freed's active negligence and Bogle and Freed's failure to state a claim for indemnification under the terms of the lease agreement, leaves Bogle and Freed with no possible basis for asserting a right to indemnification. Given our conclusion above that Freed is not entitled to assert a claim for indemnification under the lease agreement, we conclude that the trial court erred in denying Wolverine's motion with regard to Freed. However, we do not believe that the trial court erred in denying Wolverine's motion with regard to Bogle's claims.

A motion pursuant to MCR 2.116(C)(8) tests the legal sufficiency of the complaint. This Court, which utilizes the same standard as the trial court, "must accept as true all well-pleaded factual allegations, as well as any conclusions which can reasonably be drawn therefrom." *Ashley v Bronson,* 189 Mich App 498, 501; 473 NW2d 757 (1991). A motion for summary disposition based on a party's failure to state a claim may be granted "only when the claim, on the pleadings alone, is so clearly unenforceable as a matter of law that no factual development could possibly justify a right

to recovery." *Id.; Pawlak v Redox Corp,* 182 Mich App 758, 763; 453 NW2d 304 (1990).

When considering whether a third-party complaint has set forth a claim for indemnification, this Court must consider the allegations in both the third-party complaint and the original complaint. *Hill v Sullivan Equipment Co,* 86 Mich App 693, 697; 273 NW2d 527 (1978). Under the applicable standard for a failure to state a claim, this Court must also accept as true any conclusions that can be reasonably drawn from the allegations of each. *Ashley, supra* at 501; *Pawlak, supra* at 763.

The third-party complaint in this action sets forth a claim of indemnification "pursuant to the rules and regulations of the Interstate Commerce Commission." As noted above, those regulations include the provisions that require the lease agreements between interstate carriers and the lessors of semitrailer truck tractors to impose upon the interstate carriers complete responsibility for the operation of the truck during the period of the lease. Given that these required provisions were included in the lease agreement between Bogle and Wolverine, as mandated by the regulations, we conclude that Bogle sufficiently set forth a claim for indemnification under a theory of express contract. The trial court did not err in denying Wolverine's motion for summary disposition pursuant to MCR 2.116(C)(8).

VI

Finally, Wolverine also asserts that it is entitled to common-law indemnification from Freed. While this argument was raised only in Wolverine's answer to Bogle and Freed's third-party complaint and was not addressed by the trial court, we

conclude that appellate review is nonetheless appropriate. The question is one of law, and all the facts necessary for its resolution have been presented. *Beeler v Michigan Racing Comm'r,* 191 Mich App 498, 500; 478 NW2d 700 (1991).

We begin by noting that Wolverine does not claim a right of indemnification against Bogle, a decision we believe is correct. A contract of indemnification must be strictly construed against the drafter. *Fischbach-Natkin Co v Power Process Piping, Inc,* 157 Mich App 448, 452; 403 NW2d 569 (1987). The indemnification agreement in this case, albeit imposed by statute, was prepared by Wolverine, and in that agreement Wolverine assumed responsibility "for all claims for damages, or otherwise, arising out of the operations of this equipment during the full period of the lease." We conclude that Wolverine may not seek indemnification from Bogle.

The right to common-law indemnity is based upon an equitable principle: where the wrongful act of one party results in another being held liable, the latter party is entitled to restitution from the wrongdoer. *Skinner, supra* at 580. We cannot disagree with Wolverine's argument that, if it is held liable because of Freed's active negligence, it is theoretically entitled to common-law indemnification from Freed.

While we agree with the trial court that Freed was a statutory employee of Wolverine, we disagree with its conclusion that this relationship precludes Wolverine from seeking common-law indemnification from Freed. We hold that, even as Freed's constructive employer, Wolverine is entitled to "seek contribution or indemnification from other potentially responsible parties," including Freed. *Wyckoff Trucking, Inc v Marsh Bros Trucking Service, Inc,* 58 Ohio St 2d 261, 266; 569 NE2d

1049 (1991). Such a holding in no way undermines the purpose underlying the ICC regulations. The innocent victim is entitled to prompt compensation from an easily identifiable responsible party. However, nothing in the ICC regulations precludes a carrier from seeking recovery from another party who may also be at fault. *Id.* Accordingly, we conclude that the trial court erred in granting Freed's motion for summary disposition of Wolverine's countercomplaint for common-law indemnification.

VII

We decline to address the issues regarding insurance coverage that the parties have attempted to place before this Court. The real parties in interest to any claim regarding insurance coverage for Freed's alleged negligence are the insurers themselves. Neither insurer is a party to this action. Accordingly, resolution of this issue must await another day.

In summary, we believe that Michigan law, with due reference to the duties prescribed and the relationships created by the applicable ICC regulations, determines the liability of an ICC-regulated carrier to injured third-parties. Wolverine, under Michigan law, was liable as an owner of the vehicle. Bogle was entitled to indemnification from Wolverine under the terms of the parties' lease agreement, as imposed by the ICC regulations. However, Wolverine may be entitled to common-law indemnification from Freed for any amount it owes to Bogle. Because the real parties in interest are not before us, we decline to address the parties' arguments regarding priority or applicability of their respective insurance coverages.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.