*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

CYNTHIA K. NEWMEYER and LAWRENCE
W. NEWMEYER,

UNPUBLISHED
August 22, 2019

Plaintiffs-Appellants,

v

No. 343206
Kalamazoo Circuit Court
LC No. 2015-000368-CH

BANK OF AMERICA, INC., and FEDERAL
HOME LOAN MORTGAGE CORPORATION,
also known as FREDDIE MAC,

Defendants-Appellees.

Before: GADOLA, P.J., and MARKEY and RONAYNE KRAUSE, JJ.

PER CURIAM.

In this proceeding to enjoin a pending foreclosure, plaintiffs Cynthia K. Newmeyer and Lawrence W. Newmeyer appeal by right the trial court's order granting summary disposition in favor of defendants Bank of America, Inc. (BOA), and Federal Home Loan Mortgage Corporation (Freddie Mac). We affirm.

## I. BACKGROUND

In 2007, plaintiff Cynthia K. Newmeyer secured a $193,000 loan from Countrywide Bank, N.A., to finance the purchase of a home in Kalamazoo. As security for the loan, plaintiffs mortgaged the home to Mortgage Electronic Registration Systems, Inc. (MERS), which was acting as nominee for Countrywide. The mortgage was eventually assigned to defendant BOA.

In 2011 and 2012, the loan was modified. Plaintiffs were offered a trial period for a third modification; however, they responded by requesting more information, and the loan was not modified for a third time. In 2015, it is undisputed that plaintiffs defaulted on the loan. BOA sent notice of a foreclosure sale. Plaintiffs responded by commencing this lawsuit with a 10-count complaint. The trial court granted defendants' motion for summary disposition and dismissed all 10 counts.

## II. STANDARD OF REVIEW

-1-

"We review de novo a trial court's decision on a motion for summary disposition to determine whether the moving party is entitled to judgment as a matter of law." *Cuddington v United Health Servs, Inc*, 298 Mich App 264, 270; 826 NW2d 519 (2012). "In reviewing a motion brought under MCR 2.116(C)(10), we review the evidence submitted by the parties in a light most favorable to the nonmoving party to determine whether there is a genuine issue regarding any material fact." *Id*. "A genuine issue of material fact exists when the record leaves open an issue on which reasonable minds could differ." *Bennett v Detroit Police Chief*, 274 Mich App 307, 317; 732 NW2d 164 (2006). The trial court's determination that some of plaintiffs' claims were subject to summary dismissal on the basis of the statute of frauds implicated MCR 2.116(C)(7). This Court must consider the documentary evidence submitted for purposes of a motion brought under MCR 2.116(C)(7) in a light most favorable to the nonmoving party. *Snead v John Carlo, Inc*, 294 Mich App 343, 354; 813 NW2d 294 (2011). "If there is no relevant factual dispute, whether a plaintiff's claim is barred under a principle set forth in MCR 2.116(C)(7) is a question of law for the court to decide." *Id.*

## III. ANALYSIS

Plaintiffs argue that the trial court erred in dismissing all their claims. After review of the parties' arguments and the record, we disagree.

In Counts I and II, plaintiffs alleged fraud and misrepresentation. In *Zaremba Equip, Inc v Harco Nat'l Ins Co*, 280 Mich App 16, 38-39; 761 NW2d 151 (2008), this Court set forth the elements of fraud, stating:

> To establish a prima facie case of fraud, a plaintiff must prove that (1) the defendant made a material representation, (2) the representation was false, (3) the defendant knew that it was false when it was made, or made it recklessly, without any knowledge of its truth and as a positive assertion, (4) the defendant made the representation with the intention that the plaintiff would act on it, (5) the plaintiff acted in reliance on it, and (6) the plaintiff suffered injury because of that reliance.

In this case, Count I plaintiff alleged that BOA's predecessor Countrywide misrepresented to plaintiffs that private mortgage insurance (PMI) was mandatory. There is no genuine issue of material fact that Countrywide did not falsely represent that PMI was mandatory. Rather, in 2007, when Cynthia Newmeyer secured the loan from Countrywide, she signed a "Mortgage Insurance Disclosure" that provided that PMI was mandatory until certain conditions were met and the loan-to-value ratio was 80%. Plaintiffs do not contend that the conditions to remove the PMI were satisfied. Therefore, there is no evidence that Countrywide made false representations regarding the PMI.

Plaintiffs cite a letter that Countrywide sent wherein Countrywide indicated that $117.41 of the $1,593.50 monthly mortgage payment was attributed to "Optional Insurance (monthly)." The trial court, however, did not err in holding that PMI was mandatory under the loan documents and that the 2009 letter did not create an issue of fact as to whether PMI was mandatory. The plain language of the relevant contractual document provided that PMI was mandatory because the loan-to-value ratio was 91.9%. The mortgage insurance disclosure was a binding contract related to Cynthia Newmeyer's securing the home loan. The plain language of

that document provided that PMI was mandatory. "If the contractual language is unambiguous, courts must interpret and enforce the contract as written, because an unambiguous contract reflects the parties' intent as a matter of law." *In re Smith Trust*, 480 Mich 19, 24; 745 NW2d 754 (2008). There was no misrepresentation with respect to the PMI.

Plaintiffs do not contend that they met the prerequisites to cancel the PMI, and plaintiffs cannot otherwise rely on extrinsic evidence to contest the unambiguous contractual language. See *id*. (explaining that extrinsic evidence is proper to consider in a contract dispute only when the contractual terms are ambiguous). In short, because the plain language of the contract provided that PMI was mandatory, there was no evidence to show that BOA's predecessor made a fraudulent misrepresentation with respect to PMI. Accordingly, the trial court did not err in granting summary disposition as to Count I.

With respect to Count II, plaintiffs alleged that defendants engaged in fraud when defendants' representatives made misrepresentations regarding the loan modification process. The trial court did not err when it ruled that this claim was barred by the statute of frauds. MCL 566.132(2) provides as follows:

> (2) An action shall not be brought against a financial institution to enforce any of the following promises or commitments of the financial institution unless the promise or commitment is in writing and signed with an authorized signature by the financial institution:
>
> (a) A promise or commitment to lend money, grant or extend credit, or make any other financial accommodation.
>
> (b) A promise or commitment to renew, extend, *modify*, or permit a delay in repayment or performance of a loan, extension of credit, or other financial accommodation.
>
> (c) A promise or commitment to waive a provision of a loan, extension of credit, or other financial accommodation. [Emphasis added.]

In this case, the factual allegations underlying Count II of the complaint all concerned alleged promises or commitments made by defendants—financial institutions—and plaintiffs did not allege or submit evidence that any of the promises or commitments were in writing and signed by an authorized representative. More specifically, the allegations concerned representations that defendants purportedly made regarding the modification of a loan. Accordingly, Count II was barred as a matter of law pursuant to MCL 566.132(2), and the trial court did not err in granting summary disposition as to Count II.

With respect to Count III, plaintiffs alleged that defendants were negligent for engaging in the conduct set forth in Count II and for engaging in other conduct related to plaintiffs' request for modification. Specifically, plaintiffs alleged that defendants confused their file with another file, delayed modification decisions, rejected payments and provided the wrong address for payments, and advised plaintiffs to delay their modification application. This claim, like Count II, relied on factual allegations concerning alleged oral promises that defendants made to

plaintiffs concerning the modification process, and therefore, it was barred by the statute of frauds. See MCL 566.132(2).

Moreover, to the extent that plaintiffs alleged in Count III that defendants were negligent in handling the loan documents or processing the modification request, we find that the claim fails because any duty on the part of defendants arose from their contractual relationship with plaintiffs. "[T]he threshold question is whether the defendant owed a duty to the plaintiff that is separate and distinct from the defendant's contractual obligations. If no independent duty exists, no tort action based on a contract will lie." *Fultz v Union-Commerce Assocs*, 470 Mich 460, 467; 683 NW2d 587 (2004). Here, any duty arose exclusively from the contractual relationship. Plaintiffs fail to identify the nature of any independent duty that existed that was separate and distinct from the contractual relationship they had with plaintiffs. Accordingly, the negligence claim failed as a matter of law, and the trial court did not err in granting summary disposition as to Count III.

With respect to Count IV, plaintiffs alleged that defendants were estopped from foreclosing on the mortgage because defendants engaged in certain conduct that precluded foreclosure. Specifically, plaintiffs alleged that defendants informed them not to make payments, rejected "catch-up" payments, provided the wrong address for payment, and created unnecessary delays. Plaintiffs further contended that defendants had declared "all information regarding Plaintiffs' mortgage/promissory note confidential and refus[ed] to provide such information to Plaintiffs." In addition, plaintiffs alleged that defendants made misrepresentations about loan modification and engaged in fraud in handling the mortgage and promissory note. The trial court did not err in dismissing this claim.

"Equitable estoppel may arise where (1) a party, by representations, admissions, or silence intentionally or negligently induces another party to believe facts, (2) the other party justifiably relies and acts on that belief, and (3) the other party is prejudiced if the first party is allowed to deny the existence of those facts." *Conagra, Inc v Farmers State Bank*, 237 Mich App 109, 141; 602 NW2d 390 (1999). Plaintiffs failed to create a genuine question of material fact to support asserting equitable estoppel to avoid the foreclosure. In Count IV, like in Counts II and III, plaintiffs alleged that defendants made oral representations regarding the loan documents and modification of the loan. The claim was, therefore, barred by the statute of frauds. See MCL 566.132(2). To the extent that plaintiffs alleged that defendants failed to provide certain documents, we find that plaintiffs failed to present any evidence to demonstrate how such failure induced plaintiffs' belief or reliance such that defendants should be equitably estopped from foreclosing on the loan. In short, the trial court did not err in granting summary disposition as to Count IV.

In Count V, plaintiffs alleged "lack of authority over property." Plaintiffs alleged that they did not issue a mortgage "to MERS, never received notice of any assignment to MERS, and have never previously heard of MERS." Plaintiffs also alleged that defendants previously claimed that Countrywide assigned the mortgage to defendants. Plaintiffs argued that defendants did not have authority over the mortgage.

The trial court did not err in dismissing Count V. Initially, plaintiffs were not parties to the assignment, and they lack standing to challenge the validity of the assignment. See *Bowles v*

*Oakman*, 246 Mich 674, 678; 225 NW 613 (1929). Moreover, under the plain terms of the mortgage, MERS was identified as "the mortgagee." MERS then assigned the mortgage to BAC Home Loans Servicing, which merged with BOA. In sum, there was no evidence to support plaintiffs' claim that BOA did not have legal authority over the property, and the trial court did not err in dismissing Count V.

With respect to Count VII,[1] plaintiffs alleged that defendants violated MCL 445.252, a section of the Michigan regulation of collection practices act (MRCPA), MCL 445.251 *et seq*. MCL 445.252 provides in relevant part as follows:

> A regulated person shall not commit 1 or more of the following acts:
>
> (a) Communicating with a debtor in a misleading or deceptive manner, such as using the stationery of an attorney or credit bureau unless the regulated person is an attorney or is a credit bureau and it is disclosed that it is the collection department of the credit bureau.
>
> * * *
>
> (e) Making an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt or concealing or not revealing the purpose of a communication when it is made in connection with collecting a debt.
>
> (f) Misrepresenting in a communication with a debtor 1 or more of the following:
>
> * * *
>
> (*ii*) The legal rights of the creditor or debtor.
>
> * * *
>
> (n) Using a harassing, oppressive, or abusive method to collect a debt, including causing a telephone to ring or engaging a person in telephone conversation repeatedly, continuously, or at unusual times or places which are known to be inconvenient to the debtor. All communications shall be made from 8 a.m. to 9 p.m. unless the debtor expressly agrees in writing to communications at another time. All telephone communications made from 9 p.m. to 8 a.m. shall be presumed to be made at an inconvenient time in the absence of facts to the contrary.

---

[1] The trial court dismissed Count VI before plaintiffs filed a second amended complaint, but that claim is not at issue in this appeal.

In MCL 445.251(g), the MRCPA defines the term "regulated person" in relevant part as follows:

(g) "Regulated person" means a person whose collection activities are confined and are directly related to the operation of a business other than that of a collection agency including any of the following:

(*i*) A regular employee who collects accounts for 1 employer if the collection efforts are carried on in the name of the employer.

(*ii*) A state or federally chartered bank that collects its own claim.

(*iii*) A trust company that collects its own claim.

(*iv*) A state or federally chartered savings and loan association that collects its own claim.

(*v*) A state or federally chartered credit union that collects its own claim.

MCL 445.257(2) provides a civil cause of action for individuals harmed by a violation of the MRCPA, stating:

(1) A person who suffers injury, loss, or damage, or from whom money was collected by the use of a method, act, or practice in violation of this act may bring an action for damages or other equitable relief.

(2) In an action brought pursuant to subsection (1), if the court finds for the petitioner, recovery shall be in the amount of actual damages or $50.00, whichever is greater. If the court finds that the method, act, or practice was a wilful violation, the court may assess a civil fine of not less than 3 times the actual damages, or $150.00, whichever is greater, and shall award reasonable attorney's fees and court costs incurred in connection with the action.

In their complaint, plaintiffs did not allege with any specificity the conduct alleged to have constituted a violation of MCL 445.252. Rather, plaintiffs cited paragraphs from the complaint and alleged that the conduct depicted in the paragraphs violated certain provisions of MCL 445.252. For example, plaintiffs alleged that defendants violated MCL 445.252(a) by communicating with plaintiffs in a misleading or deceptive manner, and plaintiffs cited 15 paragraphs from the complaint to support the alleged violation. Plaintiffs made similar allegations that defendants violated MCL 445.252(e), (f)(*ii*), and (n).

The trial court dismissed Count VII, holding that plaintiffs relied on oral representations to support their claim and that such representations were barred by the statute of frauds. The trial court did not err in dismissing the claim.

We hold as a matter of law that defendants did not violate MCL 445.252, nor did any claimed violation cause harm. Importantly, the conduct underlying Count VII did not concern debt collection practices. Instead, the gravamen of the claim concerned the manner in which

defendants responded to plaintiffs' request to modify their loan. There is no evidence to conclude that the manner in which defendants responded to the modification request caused plaintiffs to default on the loan. Plaintiffs do not dispute that they defaulted on the modified loan. In addition, plaintiffs do not dispute that in April 2015, defendants offered them a trial period under a "Freddie Mac Standard Modification Plan." Therefore, all the alleged conduct related to requests for modification that occurred before April 2015 is immaterial. Plaintiffs were afforded an opportunity to participate in a modification trial period. Plaintiffs, however, did not accept the opportunity. Instead, they sent a letter requesting more information and a change in the terms of the trial period. In short, the evidence viewed in a light most favorable to plaintiffs is insufficient to create an issue of fact as to whether defendants' conduct regarding the modification caused plaintiffs to default on their loan.

Moreover, the gravamen of plaintiffs' claim under MCL 445.252 concerned alleged oral representations that defendants made during the loan modification process. To the extent that plaintiffs alleged that defendants' failure to provide a favorable modification despite oral promises to the contrary, we again note that these claims were barred by the statute of frauds. See MCL 566.132(2). In the instant case, plaintiffs did not allege that any of defendants' representations were in writing and signed by defendants. Therefore, plaintiffs' claims regarding the alleged oral representations made by defendants were barred by the statute of frauds and could not form the basis of a claim under MCL 445.252.

In addition, by simply citing to paragraphs in the complaint to support the position that defendants violated MCL 445.252, plaintiffs failed to create a genuine issue of material fact in that plaintiffs did not articulate what aspects of defendants' conduct violated the statute and how that conduct resulted in damages. In sum, the trial court did not err in granting summary disposition in favor of defendants with respect to Count VII.

With respect to Count VIII, plaintiffs alleged "interference with performance." Plaintiffs asserted that defendants "knowingly" interfered with plaintiffs' performance on a contract by "refusing payments and providing the wrong address for payments." The trial court construed this claim as one of tortious interference with a contract and ruled that there was no evidence to create a question of fact to support the claim.

"It is well settled that the gravamen of an action is determined by reading the complaint as a whole, and by looking beyond mere procedural labels to determine the exact nature of the claim." *Adams v Adams (On Reconsideration)*, 276 Mich App 704, 710-711; 742 NW2d 399 (2007). "The elements of tortious interference with a contract are (1) the existence of a contract, (2) a breach of the contract, and (3) an unjustified instigation of the breach by the defendant." *Health Call of Detroit v Atrium Home & Health Care Servs, Inc*, 268 Mich App 83, 89-90; 706 NW2d 843 (2005).

Here, the clear gravamen of the claim was that defendants interfered with contractual performance. Therefore, plaintiffs had the burden to allege facts to support the elements of a prima facie claim of tortious interference with a contract. Plaintiffs' claim, however, failed as a matter of law. "To maintain a cause of action for tortious interference with a contract, a plaintiff must establish a breach of contract caused by the defendant, and that the defendant was a 'third party' to the contract or business relationship." *Dzierwa v Mich Oil Co*, 152 Mich App 281, 287;

393 NW2d 610 (1986) (citation omitted). In this case, defendants were not third parties to the contract; therefore, Count VIII failed as a matter of law, and the trial court did not err in dismissing the claim.

In a similar claim, Count IX, plaintiffs alleged anticipatory breach of contract. Plaintiffs asserted that "[b]y interfering with Plaintiffs' performance, Defendant is in anticipatory breach of any contract between Defendant and either Plaintiff." "Under the doctrine of anticipatory breach, if a party to a contract, prior to the time of performance, unequivocally declares the intent not to perform, the innocent party has the option to either sue immediately for the breach of contract or wait until the time of performance." *Paul v Bogle*, 193 Mich App 479, 493; 484 NW2d 728 (1992) (quotation marks omitted). "In determining whether an anticipatory breach has occurred, it is the party's intention manifested by acts and words that is controlling, and not any secret intention that may be held." *Id*.

Viewed in a light most favorable to plaintiffs, we conclude that the evidence did not create a question of fact regarding a claim of anticipatory breach of contract. There was no evidence to show that either defendant unequivocally manifested intent not to perform on the contract. Rather, it is undisputed that plaintiffs defaulted on the modified loan. The allegations in the complaint concerned alleged misrepresentations about modification. There were no facts alleged that either BOA or Freddie Mac manifested an intent not to perform on the contract. Therefore, the trial court did not err in dismissing Count IX.

Finally, with respect to Count X relative to Freddie Mac's liability as principal, given that there were no genuine issues of material fact with respect to plaintiffs' nine other claims, we agree that the trial court did not err in dismissing Count X.

Plaintiffs argue that summary disposition was premature because defendants failed to properly respond to interrogatories. The trial court addressed plaintiffs' argument and awarded them $1,500 in sanctions, but ruled that further responses to the interrogatories would not impact its ruling on the motion for summary disposition. Summary disposition is generally premature if discovery is not complete. *Caron v Cranbrook Ed Community*, 298 Mich App 629, 645; 828 NW2d 99 (2012). Summary disposition, however, may be proper before discovery is complete where further discovery does not stand a fair chance of uncovering factual support for the position of the party opposing the motion. *Id*. Mere speculation that additional discovery might produce evidentiary support is not sufficient. *Id*. at 646. Plaintiffs fail to articulate how different or additional responses to the interrogatories would have created factual support for any of their claims. Therefore, summary disposition was properly granted.

We affirm. Having fully prevailed on appeal, defendants are awarded taxable costs under MCR 7.219.

/s/ Michael F. Gadola
/s/ Jane E. Markey
/s/ Amy Ronayne Krause