# STATE OF MICHIGAN

# COURT OF APPEALS

KATHLEEN COREY,

      Plaintiff-Appellant,

v

DEPARTMENT OF TRANSPORTATION,

      Defendant-Appellee.

UNPUBLISHED
October 11, 2018

No. 340286
Court of Claims
LC No. 16-000231-MD

Before: CAVANAGH, P.J., and MARKEY and LETICA, JJ.

PER CURIAM.

Plaintiff appeals by right the trial court's order granting defendant's motion for summary disposition under MCR 2.116(C)(7) (immunity granted by law) in plaintiff's action under the highway exception to governmental immunity, MCL 691.1402(1). We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

Shortly after 6:00 p.m. on September 27, 2014, plaintiff and one passenger, Carol Gammon, were driving northbound on Rochester Road ("M-150") when plaintiff's vehicle fell into a construction hole at the M-150/M-59 interchange. The hole existed in the right lane adjacent to the eastbound M-59 on-ramp. There had been construction occurring at the M-150/M-59 interchange and along M-150 northbound and southbound, with various lanes closed for repair. The hole into which plaintiff's vehicle fell was in the process of being patched. Workers had removed the old concrete, but the new concrete had yet to be poured. Contractors tasked with completing the job had applied for, and received, authority to close down this portion of the right lane for the weekend. They had taken steps to close down this lane on the previous night, laying out appropriate signage, barrels, and markers.

Plaintiff commenced this lawsuit on September 18, 2016, alleging a defective highway and nuisance per se. Gammon, the passenger, also filed suit, naming plaintiff as a defendant along with the Michigan Department of Transportation (MDOT) and various contractors responsible for cutting and replacing the concrete. The cases were consolidated. Defendant sought summary disposition under MCR 2.116(C)(7), (8), and (10). The trial court granted defendant's motion for summary disposition under MCR 2.116(C)(7), agreeing with defendant that governmental immunity barred plaintiff's claim because the highway exception did not apply. In reaching this conclusion, the trial court relied on the objective test formulated in *Snead v John Carlo, Inc*, 294 Mich App 343; 813 NW2d 294 (2011). The trial court found that

-1-

defendant presented "overwhelming evidence" for the court to conclude that "a reasonable motorist, under the circumstances, would not have believed that the area of the roadway in which the accident occurred was open for public travel." The trial court also addressed plaintiff's deposition testimony, concluding on the basis of all the evidence that plaintiff's "subjective, conclusory assertion that she did not see the traffic-control devices did not create a genuine issue of material fact with regard to whether a reasonable motorist would have considered the area into which Plaintiff drove as being open to public travel at the time of the accident."

## II. DISCUSSION

Plaintiff contends that the trial court erred because she established a genuine issue of material fact regarding whether the accident site was closed to public travel. We disagree.

## A. STANDARD OF REVIEW AND RELEVANT LAW

We review de novo both the trial court's decision on a motion for summary disposition and the application of governmental immunity as a question of law. *Pierce v City of Lansing*, 265 Mich App 174, 176; 694 NW2d 65 (2005).

> When reviewing a motion for summary disposition under MCR 2.116(C)(7), all well-pleaded allegations must be accepted as true and construed in favor of the nonmoving party, unless contradicted by any affidavits, depositions, admissions, or other documentary evidence submitted by the parties. If no [material] facts are in dispute, or if reasonable minds could not differ regarding the legal effect of the facts, the question whether the claim is barred by governmental immunity is an issue of law. [*Id*. at 177 (citation omitted).]

Documentary evidence may only be considered by the trial court to the extent that its content or substance would be admissible as evidence. MCR 2.116(G)(6). Where no relevant factual dispute exists, whether a plaintiff's claim is barred by governmental immunity is a question of law for the court to decide. *Pierce*, 265 Mich App at 177. But if there is a pertinent factual dispute, summary disposition is inappropriate. *Snead*, 294 Mich App at 354.

The Legislature has provided for broad immunity of governmental agencies from tort liability. MCL 691.1407(1). But there are also exceptions, one of which is the "highway exception." MCL 691.1402(1). This exception states, in pertinent part:

> Each governmental agency having jurisdiction over a highway shall maintain the highway in reasonable repair so that it is reasonably safe and convenient for public travel. A person who sustains bodily injury or damage to his or her property by reason of failure of a governmental agency to keep a highway under its jurisdiction in reasonable repair and in a condition reasonably safe and fit for travel may recover the damages suffered by him or her from the governmental agency. . . . [T]he duty of a governmental agency to repair and maintain highways, and the liability for that duty, extends only to the improved portion of the highway designed for vehicular travel and does not include sidewalks, trailways, crosswalks, or any other installation outside of the improved portion of the highway designed for vehicular travel. [MCL 691.1402(1).]

"Highway" is defined as "a public highway, road, or street that is *open for public travel*." MCL 691.1401(c) (emphasis added). While a governmental agency has a duty to maintain highways under its jurisdiction "in reasonable repair and in a condition reasonably safe and fit for travel," MCL 691.1402(1), such a duty only applies to highways that are "open for public travel," MCL 691.1401(c). A road or a portion thereof that is closed to public travel does not fit under the "highway" definition; therefore, the highway exception would not apply to that instance. *Snead*, 294 Mich App at 359-361. "[A] highway is not open for public travel when the government 'closes' the highway and 'marks' it as being closed, which would typically entail the use of adequate traffic-control devices." *Id.* at 368. While a "road is not necessarily closed for public travel simply because construction work is being performed in the area," traffic control devices are a factor for a court to consider in its determination. *Id.* at 359-361. To determine whether a road is closed for public travel, the key test is "whether a reasonable motorist, under all the circumstances, would believe that the road was open for travel." *Id.* at 361.

## B. ANALYSIS

We conclude that no reasonable motorist could believe that the area in dispute was open for public travel. Accordingly, the trial court properly granted summary disposition to defendant under MCR 2.116(C)(7).

There is no dispute in this case that defendant is a governmental agency and was engaged in a governmental function when the accident occurred. As such, the critical issue is "whether a reasonable motorist, under all the circumstances, would believe that" the M-150 right lane at the M-150/M-59 interchange, where the accident occurred, was open or closed to public travel. See *Snead*, 294 Mich App at 361. In other words, the issue is whether, viewing the offered evidence in a light most favorable to plaintiff, *reasonable* minds could differ regarding whether the M-150 right lane at the M-150/M-59 interchange was closed to public travel. See *Snead*, 294 Mich App at 361. As the trial court noted, "overwhelming evidence" was presented to show that a reasonable motorist would not have believed that the area in dispute was open for public travel.

Bryan Turczynski, a project engineer of one of defendant's contractors, affirmed in an affidavit that he inspected the accident area on the night before the accident and found that workers had properly closed down the right lane, that the closure was in compliance with the MDOT standards for a one-lane closure, that there were adequate markings in place to warn motorists of the right lane closure, and that there were directions for motorists to properly enter the M-59 on-ramp. Additionally, Raymond Czewski, superintendent for the accident site area, was onsite until 11:00 a.m. the day of the accident. He stated at deposition that he set up cones and barrels on the night before the accident and that there were markings to warn motorists of construction. He indicated on a map provided to him at deposition where such warnings were. According to Czewski, these warnings consisted of "construction lead-in signing," such as "[r]oad work ahead," "right lane closed ahead," an "arrow board indicating the lane is closed," and barrels to gradually taper traffic out of the right lane and into the open left lane. Additionally, he stated that there were barrels blocking off the construction area where the hole was to be cut, with a clear opening in the lane for traffic to still access the M-59 on-ramp.

Furthermore, two more contractor engineers, Octavia Stewart-Carrington and Rob Stuart, inspected the area, both on the night before and on the day of the accident. Both wrote in their

reports that the right lane was closed and that all necessary warning signs were present, including cones, barrels, and construction signs. Further, Stewart-Carrington stated at deposition that despite not having independent recall of the accident day's events,[1] she knew that there must have been adequate warning signs and construction markers present on the accident day to close down the right lane. She completed her work on that day and, without such warnings and markers present, she never would have been able to do this because traffic would have been traversing the right lane. She also confirmed that she never would have written in her report that the area was adequately marked unless she had personally observed it.

Dale Moss, a patch foreman for another contractor, was on site during the accident, although he did not witness it, and he took various photographs of plaintiff's vehicle in the hole. These photographs clearly show construction cones, barrels, and a roadside sign in and around the area in dispute. Notably, several cones appear around the hole. Richard Welch, a paramedic who responded to the accident, wrote in his report that when he arrived, he found that plaintiff's vehicle "had driven in between multiple construction barrels and then into a large hole that had been cut out of the road during repaving." He further stated at deposition that he observed barrels and cones marking off the area and that these were present when the accident occurred; plaintiff's vehicle would had to have been driven between those barrels in order to get to where it ultimately ended up. He further stated that he believed it was fairly obvious to motorists that there was construction in that area. Finally, Deputy Darius Zajac, the officer responding to the accident, drew a diagram in his traffic crash report, depicting construction barrels both tapering off the right lane for lane closure and encompassing around the construction hole. He further stated at deposition that as he patrolled between 5:00 and 6:00 p.m., he recalled observing construction on northbound M-150, lane closures, and numerous barrels, cones, and signs. Upon arriving at the accident site, he wondered how such an accident could have occurred because there were cones and barrels all over the area. He also stated at deposition that the construction barrels drawn in his police report diagram were present both before the accident while he patrolled and after the accident when he arrived at the site. Moreover, he stated that the diagram did not show all of the construction markings: In fact, there were even more cones, barrels, and signs than had been depicted.

Against such evidence, plaintiff offers a myriad of theories, versions of events, and alleged contradictions and inconsistencies in the testimony of those individuals discussed above. We find plaintiff's arguments unpersuasive.

First, plaintiff presents four different, allegedly plausible, versions of events attempting to create a genuine issue of material fact. For example, plaintiff notes that there were conflicting accounts over whether the M-59 on-ramp was open or closed to traffic and whether the entrance to the on-ramp was located before or after the construction hole. Our review of the record convinces us that there is no factual dispute. Patently, the on-ramp was open to traffic and only portions of the right lane were closed.

---

[1] Stewart-Carrington's deposition took place nearly three years after the accident had transpired.

The supposed conflict over the location of the entrance to the on-ramp is irrelevant. The issue in this case is not whether the entrance to the on-ramp was located before or after the hole; rather, the issue is whether a reasonable motorist, under all the circumstances, could believe that the accident site and surrounding construction area were open to public traffic.

Second, we disagree with plaintiff's contention that there are too many factual disputes to warrant summary disposition. Plaintiff notes that she, Gammon, and a witness at the scene[2] all stated at deposition that they did not recall seeing any construction markings before the accident. Plaintiff contends that this conflicting testimony creates a genuine issue of material fact that precludes summary disposition. Plaintiff also notes the existence of evidence that some barrels and cones were moved after the accident occurred. Photographs taken at the scene demonstrate that some cones were moved during the investigation. Czewski stated at deposition that once the concrete was cut out, the cones and barrels would have been moved to mark and protect this area from traffic. Czewski further stated that the barrels and cones he had placed the previous night had been moved because, in examining the photographs of the accident site, it was apparent that they were not in the same places as before.

Viewing the evidence in a light most favorable to plaintiff, we must conclude there exists no genuine issue of material fact as to the central issue: whether a reasonable motorist, under the circumstances, would believe that the accident site was open to public travel. See *Snead*, 294 Mich App at 361. The testimony and other evidence overwhelmingly support the trial court's conclusion that a reasonable motorist would believe that the accident site was closed for public travel because it was surrounded with adequate markers, barrels, and signage that provided adequate notice to a reasonable motorist that the area was under construction and closed to public travel.

We affirm.

/s/ Mark J. Cavanagh
/s/ Jane E. Markey
/s/ Anica Letica

---

[2] This witness did not observe the accident itself, however. She merely came upon plaintiff's vehicle after it had driven into the hole.