# STATE OF MICHIGAN

# COURT OF APPEALS

FREDERICK R. WHEELER and MARILYN
WHEELER,

        Plaintiffs-Appellees,

v

CITY OF LIVONIA,

        Defendant-Appellant.

UNPUBLISHED
November 27, 2018

No. 338704
Wayne Circuit Court
LC No. 15-009025-NZ

Before: SHAPIRO, P.J., and CAVANAGH and K. F. KELLY, JJ.

PER CURIAM.

Defendant appeals as of right an order denying its motion for summary disposition of this case arising under the sewage disposal system event exception to governmental immunity, MCL 691.1416 *et seq*. We affirm.

On September 23, 2014, plaintiffs discovered water coming up through a basement floor drain while doing laundry in their house located at 15643 Edgewood Drive in Livonia. They contacted plumbing contractor Roto-Rooter, but several attempts to remedy the problem were unsuccessful.[1] On September 30, 2014, plaintiffs hired Horton Plumbing to diagnose and repair the issue. Horton discovered that a joint between two sewage pipes located under plaintiffs' driveway had come apart causing the home to become disconnected from the city sewer system. The plumber from Horton noted that the joint had not been properly supported with crushed rock or compacted sand at install; rather, a single brick was under the joint. Defendant's inspector, Jeff Michaels, was on the site at the time of this discovery and photographed the problematic joint. Horton was able to repair this disconnection, which solved the sewage-backup problem at that time.

On October 16, 2014, defendant, though its city engineer Todd Zilincik, sent a letter to residents of Edgewood Drive stating that its contractor would be relining the sanitary sewer main

---

[1] Although plaintiffs have indicated at various times during these proceedings that this first sewer-backup incident occurred in "October of 2014," there is extensive evidence that this first incident occurred on September 23, 2014.

on Edgewood Drive along the west right-of-way, from 15611 to 15939 Edgewood, and that a repair would be occurring at a sewer main in front of 15939 Edgewood.

On October 31, 2014, Zilincik sent a letter to plaintiffs stating that he was in receipt of plaintiffs' letter dated October 17, 2014, which detailed their problem with the sewer line. The letter briefly referenced an enclosed "City of Livonia Claims Form" for plaintiffs' to fill out, stating to "provide detailed information and expenses that you believe that the City of Livonia may be responsible for related to your sanitary sewer lead, including the various quotes obtained for the repair." The letter fails to mention any time requirement with respect to the submission of this Claims Form. The letter refers to plaintiffs' sanitary sewer repair made by Horton on October 2, 2014, and the permit obtained in that regard, Permit No. 14-387. It appears that plaintiffs submitted the completed Claims Form to defendant on November 12, 2014.

By letter dated April 6, 2015, plaintiffs were advised by defendant's insurance claims adjuster, Michigan Municipal Risk Management Authority (MMRMA), that defendant was offering to pay for the costs of plaintiffs' driveway repair and irrigation system repair.

On April 11, 2015, plaintiffs had a second sewer-backup incident. Like the first, it involved water backing up into their basement through a floor drain. Plaintiffs again hired Horton, who obtained a necessary permit from defendant, and Horton re-excavated the site of their previous repair, disconnected it, and found no problems. After further excavation, it was discovered that the sewer main was disconnected from plaintiffs' sewer lead, allegedly as a result of the sewer main sinking. Defendant's inspector and other employees were on the site. This repair took about 40 days to accomplish and required extensive excavation to reach the sewer main that was over 20 feet down, prolonged dewatering of the site, and rerouting of the gas service line during the repair. Defendants' employees were on-site numerous times during this protracted repair project, participated in meetings as to how to resolve the several related problems, and were involved in the decision to reroute plaintiffs' sewer line to tap into the manhole in front of plaintiffs' house to resolve the problem. In other words, defendant was extensively involved in the repair by plaintiffs' contractor—a repair for which plaintiffs were billed well over $100,000. Subsequently, plaintiffs' counsel sent a letter in May and a letter in June to MMRMA regarding the expenses incurred for the repair.

By letter dated May 14, 2015, plaintiffs' counsel advised defendant of his legal representation of plaintiffs and provided a detailed list of the expenses plaintiffs incurred from the excavation and repair work to make their property habitable. It was requested that plaintiffs' initial claim, which had been already been accepted, be amended to include these additional damages.

On July 9, 2015, plaintiffs sued defendant alleging that defendant improperly constructed and maintained the city sewer system which caused the sewage backup into their home in April 2015. Plaintiffs averred that defendant was on notice of the issues concerning the sewer system for several years but failed to make the necessary repairs. In Count I, plaintiffs alleged a claim for a sewage disposal system event under MCL 691.1416 *et seq.*, stating that plaintiffs' sewer line was disconnected from the sewer main as a result of the sewer main sinking, i.e., there was a construction, design, maintenance, operation, or repair defect in the sewer main which defendant

knew about or should have known about and failed to remedy causing plaintiffs' damages. Numerous exhibits were attached to plaintiffs' complaint, including the above-referenced letters.

On February 15, 2017, plaintiffs moved for partial summary disposition under MCR 2.116(C)(8) and (10), arguing that there was no genuine issue of material fact that defendant was liable under MCL 691.1416 *et seq*. and the only issue that remained was the amount of plaintiffs' damages. In particular, defendant's engineers, Todd Zilincik and William Yee, testified that the sewer main in front of plaintiffs' home did not have enough flow or slope which caused sediment to build up and created blockages. Further, defendant had knowledge and notice of the serious sewer issues on Edgewood Drive, including the sinking of the sewer main which caused blockages, backups, and pipe disconnections. The problems with the sewer main in front of plaintiffs' home was confirmed by defendant's contractor's camera inspection which revealed the blockages, causing the camera to be improperly submerged in fluids. The excess sediments and fluids caused the sewer main to sink. The only way plaintiffs could overcome the numerous problems with the sewer main was to relocate their connection point from the sewer main and tap into the manhole in front of their house. In fact, of the three connections attached to the sewer main, two had been previously abandoned leaving only plaintiffs' connection before these sewer backup incidents, i.e., sewer disposal system events. Accordingly, plaintiffs argued, they were entitled to summary disposition on the issue of liability. Numerous exhibits were attached to plaintiffs' motion.

On March 31, 2017, defendant moved for summary disposition under MCR 2.116(C)(7), arguing that plaintiffs' claim is barred by governmental immunity. Defendant argued that the claim is barred because (1) plaintiffs failed to comply with the 45-day notice requirement of MCL 691.1419, and (2) neither[2] occurrence alleged by plaintiffs constituted a "sewage disposal system event" in that (a) plaintiffs were responsible to maintain their sewer lead; (b) it was their laundry water that backed up into their basement, not sewage from the sewer main; (c) defendant had no knowledge of any alleged defect in the sewer main, including that it was sinking; and (d) any alleged defect in the sewer main was not a substantial proximate cause of plaintiffs' damages. Numerous exhibits were attached to the motion.

On May 2, 2017, plaintiffs filed a motion to amend their complaint which sought to include the September 2014 sewage-backup incident. Defendant opposed the motion as futile.

On May 12, 2017, plaintiffs filed a response to defendant's motion for summary disposition. Plaintiffs argued that defendant knew that the sewer system that serviced plaintiffs' property was defective and had known of the defects for years. The sewer system had design, maintenance, operation, and/or repair defects in that the sewer main was sunken or shifted and did not have enough slope and flow which caused sediment to build up, blockages, and sewer line disconnects. Defendant was aware of the numerous sewer problems on Edgewood Drive, even after most of the sewer disposal system had been replaced because it was sinking in 1996. In 2011 the sewer system was blocked with sediment or grease and, in 2014, portions of the

---

[2] Although defendant refers to both sewer events, plaintiffs' complaint only refers to the second event in April 2015.

sewer main on Edgewood upstream from plaintiffs had to be relined because of settlement and pipe separations. Further, in December 2015 when defendant had the sewer system in front of plaintiffs' home inspected by United Resource via a camera, a blockage was immediately found and it was unable to get through the sewer line. It also showed that several serious problems existed, including the failure of the sewer main lining. The only way to overcome the sewer main problems was to reroute plaintiffs' sewer line to tap into the manhole in front of plaintiffs' house.

Plaintiffs further argued that defendant did not comply with the notice requirements of MCL 691.1419(2), including that it did not provide plaintiffs with a "sufficiently detailed explanation of the notice requirements of subsection (1) to allow a claimant to comply with the requirements." Nevertheless, plaintiffs provided defendant with the proper notice and any failure to comply resulted from defendant's failure to comply as set forth in MCL 691.1419(3). And there was no problem with plaintiffs' house sewer lead; rather, the problem was with the sewer service lead that directly connected to the sewer main which was located in defendant's right-of-way and was defendant's responsibility. Plaintiffs provided the affidavits of their professional engineer expert, Gary Wuerfel, and their survey technician, Mark Dawdy, who stated that a city maintains the service lead from the sewer main to the property line, and it is located in the city's right-of-way. The house sewer lead extends from the house to that service lead. And in this case, it was the service lead that separated from the sewer main—due to the fact that the sewer main was sinking; thus, it was defendant's responsibility. Further, plaintiffs argued, defendant knew about the sewer defects before plaintiffs' sewage backups but failed to fix them and such defects were the substantial proximate cause of plaintiffs' damages. Thus, plaintiffs argued that defendant was not entitled to governmental immunity because plaintiffs can establish all of the elements required under MCL 691.1417(3).

On June 5, 2017, following oral arguments on the cross-motions for summary disposition, the trial court issued its opinion and order denying both motions.[3] The trial court concluded that plaintiffs' claim was not barred by governmental immunity because it satisfied all requirements set forth in MCL 691.1417(3) of the sewage disposal event exception. Further, defendant had sufficient notice of both of plaintiffs' occurrences, as well as of the ongoing problems with this sewer system, and defendant did accept the first claim as evidenced by the letter plaintiffs received from defendant's insurance provider—a claim that was subsequently amended after the second occurrence. Moreover, contrary to defendant's argument, sufficient evidence supported plaintiffs' claim that it was the sinking of the sewer main that caused plaintiffs' sewer lead to become disconnected from the sewer system rather than a failure of the lead itself. Accordingly, questions of fact precluded summary disposition in favor of either party and both motions were denied. This appeal followed.

---

[3] As with several other pending motions, the trial court adjourned oral argument on plaintiffs' motion to amend their complaint pending the outcome of its decision on the cross motions for summary disposition.

Defendant first argues that plaintiffs' claim is barred for failure to provide proper notice. We disagree.

A trial court's decision on a motion for summary disposition is reviewed de novo. *Walsh v Taylor*, 263 Mich App 618, 621; 689 NW2d 506 (2004). Defendant's motion was filed under MCR 2.116(C)(7) which tests whether a claim is barred by immunity granted by law. *Herman v Detroit*, 261 Mich App 141, 143; 680 NW2d 71 (2004) (citation omitted). With regard to a motion under MCR 2.116(C)(7), "a trial court should examine all documentary evidence submitted by the parties, accept all well-pleaded allegations as true, and construe all evidence and pleadings in the light most favorable to the nonmoving party." *McLain v Lansing Fire Dep't*, 309 Mich App 335, 340; 869 NW2d 645 (2015); see also *Herman*, 261 Mich App at 143-144. The plaintiff must allege facts sufficient to warrant the application of an exception to governmental immunity to survive a motion under MCR 2.116(C)(7). *Plunkett v Dep't of Transp*, 286 Mich App 168, 180; 779 NW2d 263 (2009). If no relevant facts are in dispute, and if reasonable minds could not differ on the legal effect of those facts, it is a question of law for the court whether a plaintiff's claim is barred by governmental immunity. *Milot v Dep't of Transp*, 318 Mich App 272, 275; 897 NW2d 248 (2016); *Snead v John Carlo, Inc*, 294 Mich App 343, 354; 813 NW2d 294 (2011). If a relevant factual dispute exists, summary disposition may not be granted. *Id*. An issue of statutory interpretation is reviewed de novo as a question of law. *McGoldrick v Holiday Amusements, Inc*, 242 Mich App 286, 292; 618 NW2d 98 (2000).

Although the governmental tort liability act (GTLA) affords governmental agencies engaged in a governmental function with broad immunity from tort claims, there are six statutory exceptions including the sewage disposal system event exception at issue here, MCL 691.1416 through MCL 691.1419. See *Nawrocki v Macomb Co Rd Comm*, 463 Mich 143, 158; 615 NW2d 702 (2000); *Willett v Waterford Twp*, 271 Mich App 38, 46; 718 NW2d 386 (2006). In relevant part, MCL 691.1417(2) provides that a "governmental agency is immune from tort liability for the overflow or backup of a sewage disposal system unless the overflow or backup is a sewage disposal system event and the governmental agency is an appropriate governmental agency." MCL 691.1416(k) defines a "sewage disposal system event" or "event" as:

> the overflow or backup of a sewage disposal system onto real property. An overflow or backup is not a sewage disposal system event if any of the following was a substantial proximate cause of the overflow or backup:
>
> (*i*) An obstruction in a service lead that was not caused by a governmental agency. . . .

MCL 691.1417(1) also provides that "[t]o afford property owners, individuals, and governmental agencies greater efficiency, certainty, and consistency in the provision of relief for damages or physical injuries caused by a sewage disposal system event, a claimant and a governmental agency subject to a claim shall comply with this section and the procedures in sections 18 and 19." Relevant for our purposes here is the procedure set forth in section 19. Under MCL 691.1419, claimants under this exception and the responsible governmental agency have reciprocal notice responsibilities:

> (1) Except as provided in subsections (3) and (7), a claimant is not entitled to compensation under [MCL 691.1417] unless the claimant notifies the governmental agency of a claim of damage or physical injury, in writing, within

45 days after the date the damage or physical injury was discovered, or in the exercise of reasonable diligence should have been discovered. . . . To facilitate compliance with this section, a governmental agency owning or operating a sewage disposal system shall make available public information about the provision of notice under this section.

(2) If a person who owns or occupies affected property notifies a contacting agency orally or in writing of an event before providing a notice of a claim that complies with subsection (1), the contacting agency shall provide the person with all of the following information in writing:

(a) A sufficiently detailed explanation of the notice requirements of subsection (1) to allow a claimant to comply with the requirements.

* * *

(3) A claimant's failure to comply with the notice requirements of subsection (1) does not bar the claimant from bringing a civil action under section 17 against a governmental agency notified under subsection (2) if the claimant can show both of the following:

(a) The claimant notified the contacting agency under subsection (2) during the period for giving notice under subsection (1).

(b) The claimant's failure to comply with the notice requirements of subsection (1) resulted from the contacting agency's failure to comply with subsection (2).

In this case, plaintiffs' complaint only pertains to the sewage backup event that occurred in April 2015; thus, that is the event at issue for purposes of the notice requirement. See MCR 2.111(B)(1). It is undisputed that before plaintiffs' contractor could do any significant work in determining and remedying the cause of plaintiffs' sewage backup event, a permit from defendant was required. It is also undisputed that defendant's inspector and other employees were on the site numerous times during this 40-day repair project, participated in several meetings as to how to resolve problems that arose, and were involved in the decisions that ultimately resolved the problem. It is clear, then, that the appropriate "contacting agency" for defendant was notified of this sewage backup event, as required under MCL 691.1419(2), which triggered defendant's duty to provide plaintiffs with information, in writing, as to the notice requirement of subsection (1) for submitting a claim. See *Dybata v Wayne Co*, 287 Mich App 635, 646; 791 NW2d 499 (2010). And although plaintiffs have repeatedly argued that defendant failed to comply with its statutory duty of providing them with information regarding the notice requirement, defendant failed to refute plaintiffs' argument in that regard with any evidence to the contrary. Thus, to the extent that plaintiffs failed to comply with the notice requirement of subsection (1), their claim is not barred because defendant was in fact notified almost immediately of the sewage backup event and failed to apprise plaintiffs that they had only 45 days to submit a written claim in that regard or they would forfeit that right—a right they obviously had no intention of forfeiting considering their prior claim related to the 2014 sewer

backup event. See MCL 691.1419(3). Accordingly, the trial court properly denied, but for the wrong reasons, defendant's motion for summary disposition premised on the argument that plaintiffs' claim was barred for failure to provide proper notice.

Next, defendant argues that the sewage backup events did not fall within the category of compensable events per the exception to governmental immunity. However, because plaintiffs' complaint only raised a claim regarding the April 2015 sewer backup event we will not consider whether the September 2014 event was compensable. See MCR 2.111(B)(1). And we conclude that a genuine issue of material fact exists as to whether the April 2015 sewer backup event was compensable.

As discussed above, a governmental agency is not immune from tort liability for the overflow or backup caused by a sewage disposal system event. MCL 691.1417(2). And a "sewage disposal system event" is an overflow or backup of a sewage disposal system unless the substantial proximate cause of it was an obstruction in a service lead not caused by a governmental agency, another connection, or an act of war. MCL 691.1416(k). A "service lead" is "an instrumentality that connects an affected property . . . to the sewage disposal system and that is neither owned nor maintained by a governmental agency." MCL 691.1416(i). And a "sewage disposal system" means "all interceptor sewers, storm sewers, sanitary sewers . . . and all other plants, works, instrumentalities, and properties used or useful in connection with the collection, treatment, and disposal of sewage . . . under the jurisdiction and control of a governmental agency." MCL 691.1416(j). Under MCL 691.1417(3), if a claimant believes that a sewage disposal system event caused property damage, the claimant may seek compensation if the claimant can show all of the following existed at the time of the event:

(a) The governmental agency was an appropriate governmental agency.

(b) The sewage disposal system had a defect.

(c) The governmental agency knew, or in the exercise of reasonable diligence should have known, about the defect.

(d) The governmental agency, having the legal authority to do so, failed to take reasonable steps in a reasonable amount of time to repair, correct, or remedy the defect.

(e) The defect was a substantial proximate cause of the event and the property damage or physical injury.

Defendant first appears to argue that because it was plaintiffs own sewage that backed up into their basement their claim is not actionable. This argument, however, is not supported by any citation to supporting authority and we cannot follow its logic; thus, it is deemed abandoned. See *Peterson Novelties, Inc v Berkley*, 259 Mich App 1, 14; 672 NW2d 351 (2003). Further, to the extent that defendant is arguing that the April 2015 incident was not a "sewage disposal system event," we disagree. This incident involved a backup of sewage that plaintiffs' allege was caused by the sewer main sinking and becoming separated from their lead. It did not involve an obstruction in the service lead, another connection to the sewage disposal system, or an act of war. See MCL 691.1416(k)(*i*)-(*iii*).

Next, defendant argues that plaintiffs cannot establish the elements of MCL 691.1417(3), although defendant concedes that it was the appropriate governmental agency relative to the sewer main. Plaintiffs have argued that defendant was on notice of problems with the sewer system on Edgewood Drive for years but failed to make the necessary repairs before the sewer main became disconnected from plaintiffs' house sewer lead. In particular, plaintiffs argued that the sewage disposal system was defective because it did not have sufficient slope or flow which caused buildup, blockages, and excess fluid which led to the sewer main sinking and the disconnection of plaintiffs' sewer lead. In support of their arguments, plaintiffs relied in part on testimony from defendant's employees, the contractors who performed plaintiffs' repair, plaintiffs' expert, and a survey technician.

Defendant's civil engineer of over 30 years, William Yee, testified that he knew there was a problem with the sanitary sewer on Edgewood Drive in that it did not have enough slope and did not have enough flow which causes sediment buildup and blockages, and defendant did nothing to rectify the issue. Yee agreed that sediment in the pipe could cause a blockage and lead to having higher levels of fluid in the pipe and such conditions could lead to problems similar to what plaintiffs experienced. Yee recalled that in 2014, defendant relined a portion of the sewer main north (upstream) of plaintiffs' location because the sewer main had settled causing displacements of pipe, i.e., gaps in the sewer line. Yee believed that the incident upstream of plaintiffs' property caused additional sediment to flow through the pipe, and possibly more fluid to flow through the pipe, which may have caused additional sediment to accumulate directly in front of plaintiffs' home. He also testified that "if the extra sediment had caused the main to settle at that time, it could cause the disconnection of a sewer lead." Yee further testified that, in 2011, the sewer line in front of plaintiffs' home was blocked with either sediment or grease. In 2015, defendant had a contractor place a camera in the manhole in front of plaintiffs' house to view the line but there was a blockage so they could not get through the line until they used a machine to jet the line. That indicated to Yee that there was a problem in that segment of the sewer which could have been a buildup of debris and, to his knowledge, it was not repaired. A video report done by defendant's contractor, United Resource, in December 2015 indicated that the lining in the sewer main that serviced plaintiffs' house was failing in that it was starting to come apart which could cause infiltration of the sewer which means groundwater gets into the sewer. In light of these findings, Yee believed that repairs were needed to this portion of the sewer line and that the sewer should be relined. Yee testified that a sewer main full of water increases the weight in the sewer main and the extra weight could cause settlement and settlement of the main could cause a sewer lead connection to fall off. And according to the survey drawing that was done with regard to the sewer main that serviced plaintiffs' house, it appeared to Yee that the sewer main had settled which could have caused plaintiffs' sewer lead connection to fall off. Further, although there had originally been three taps on the same sewer line that serviced plaintiffs, two of those lines had been abandoned which left only plaintiffs' line before it was rerouted to the manhole.

Defendant's city engineer, Todd Zilincik, testified that the sewer main pipe that serviced plaintiffs' home had a downstream pipe that was slightly elevated compared to the upstream pipe and typically they should be at the same elevation or the downstream pipe should be slightly below because it is a gravity system. If a pipe is at the wrong elevation, there could be a potential for more fluid in the pipe and the system is set up to handle a certain flow. Zilincik also testified that originally there had been three leads connected to the sewer main that serviced

plaintiffs, but it appeared that two of those lines had been abandoned which left only plaintiffs' line before it was rerouted to the manhole.

One of the contractors who performed plaintiffs' repair, Doug Spuck, testified that the "sewer lead" is the first couple of sections of pipe coming off of the sewer main towards the residential house or commercial building. Spuck was involved in the excavation to reach the sewer main and actually uncovered plaintiffs' sewer lead by hand-digging. He immediately saw that the sewer main was disconnected from the sewer lead; the lead was pulled away. He testified: "The last piece going into the main there was about a three-inch gap between the six-inch clay pipe and where it ties on to the 18-inch concrete main."

Another contractor involved in plaintiffs' repair, Jeffrey Horton, testified that a "sewer lead" is the pipe that goes from the city sewer to the property line and a "house sewer" is the pipe that goes from the house to the sewer lead. The sewer lead is in the right-of-way. And these designations are stated as such in the plumbing code.

Plaintiffs also relied on the testimony of their expert, Gary Wuerfel, who averred in his affidavit that the sinking of the sewer main caused the disconnection of the sewer main from plaintiffs' sewer lead. In his deposition, Wuerfel testified that it was obvious that the 18-inch sewer main pipe had settled. And plaintiff relied on the testimony of Mark Dawdy, a survey technician, who performed a survey at plaintiffs' property and averred in his affidavit that he observed and surveyed sinking of the sewer main which caused plaintiffs' lead to become separated from the sewer main.

Considering the record evidence, we disagree with defendant's argument that plaintiffs cannot establish the elements of MCL 691.1417(3). Defendant is the appropriate governmental agency and there are, at minimum, genuine issues of material fact as to whether the sewage disposal system had a defect (including a sinking sewer main) that defendant knew or should have known about yet failed to take reasonable steps in a reasonable amount of time to repair or correct, and the defect was a substantial proximate cause of the event (which occurred when the sewer main became separated from plaintiffs' sewer lead) and plaintiffs' property damage.[4] Therefore, the trial court properly denied defendant's motion for summary disposition under MCR 2.116(C)(7).

Further, we reject defendant's argument that the trial court must conduct an evidentiary hearing on the threshold issue whether defendant is entitled to immunity. Plaintiffs have established that defendant is not entitled to governmental immunity as a matter of law, i.e., they have established that the sewer system disposal event exception to governmental immunity is

---

[4] Defendant's expert, Vyto Kaunelis, opined in his affidavit that a problem with the sewer main would have caused other residents to have sewage backups when plaintiffs' backup occurred. However, defendants employees, Yee and Zilincik, both agreed that, although three lines were originally tapped into this sewer main, two had been abandoned which left only plaintiffs' line when this event occurred.

applicable. It is for the trier of fact to determine whether plaintiffs have established that they are entitled to compensation under MCL 691.1417(3).

Affirmed. Plaintiffs are entitled to costs as the prevailing parties. MCR 7.219(A).


/s/ Douglas B. Shapiro
/s/ Mark J. Cavanagh